# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ARCH & ENG, LLC d/b/a Z GRILL AND TAP, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:24-cv-1068 |
| GATOR FLOWER MOUND, LLC a/k/a FLORIDA GATOR FLOWER MOUND, LLC, | § § § § | Judge Mazzant |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Gator Flower Mound, LLC's Motion for Final Summary Judgment (the "Motion") (Dkt. #24). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises from a property dispute. On or around December 31, 2003, a commercial lease for Bay #18 at the Marketplace at Flower Mound (the "Property") was entered into between The Landing at Arbor Place Limited Partnership and Sonoma Restaurant Group, Inc., d/b/a Z Grill & Tap (Dkt. #14 at ¶ 6). Later, on or around March 16, 2016, Z Grill & Tap was purchased as part of an asset sale from the prior owner, Z2A Investments, Inc. (Dkt. #14 at ¶ 7). Three years after that, Z Grill & Tap ("Plaintiff") and Gator Flower Mound LLC ("Defendant") entered into a written Third Amendment to Lease (the original commercial lease and the Third Amendment to Lease are collectively referred to as the "Contract"), whereby Plaintiff would lease the Property from the Defendant lessor until January 31, 2025 (Dkt. #14 at ¶ 8). Plaintiff operated a restaurant on the Property from March 2019 until it vacated the same in January 2024 (Dkt. #38 at pp. 1–2).

Plaintiff does not color its vacancy of the leased property as an impromptu decision. Rather, Plaintiff cites its continued struggle with a perfidious odor and a leaky roof as the reasons for its early departure (Dkt. #14 at ¶¶ 9–12). Plaintiff alleges that its staff and numerous dine-in and bar customers noticed and were forced to endure "an offensive sewer gas smell penetrating the property" and the repeated intrusion of rain on the premises (Dkt. #14 at ¶ 10). The foul smell would often become so strong that some patrons would "turn away and leave without even fully entering the restaurant" (Dkt. #14 at ¶ 11). Both the smell and the intrusion of rainwater were purportedly intermittent affairs, as each issue would "occasionally wane and frequently strengthen" (Dkt. #14 at ¶ 11). Despite Plaintiff's repeated contact with Defendant over the prevalence of the issues, neither the odor nor the faulty roof were ever fully corrected (Dkt. #14 at ¶ 13). Instead, each issue continued to negatively impact Plaintiff's business despite Defendant repeatedly taking action to address the issues and assuring Plaintiff each time that they were finally resolved (Dkt. #14 at ¶¶ 17–18).

Over the years, Plaintiff continued to complain about the odor and leaking problems to a rotating cast of Defendant's property management agents (*See* Dkt. #14 at ¶ 19; Dkt. #24 at p. 3). Not only that, but Plaintiff also took it upon itself to attempt to rid the Property of its perfidious odor (Dkt. #14 at ¶ 25). Plaintiff ultimately applied an array of chemical drain cleaners and mechanical plumbing roto-rooter equipment to the affected drains, to no avail (Dkt. #14 at ¶ 25). Communication between the parties over the two issues began to falter following a particularly heavy instance of stormy weather on August 9, 2022 (*See* Dkt. #33 at p. 5). In 2023, Defendant stopped responding to Plaintiff's requests for repair altogether (Dkt. #33-17 at p. 3).

Shortly thereafter, Plaintiff vacated the Property and sought to resolve its issues with Defendant in court. On January 31, 2024, Plaintiff filed suit against Defendant (Civil Action No. 24-0990-481) in the 481st District Court of Denton County, Texas (Dkt. #1-3). Defendant removed this case to federal court pursuant to this Court's diversity of citizenship jurisdiction (Dkt. #1). Over the course of litigation, Plaintiff filed its Fourth Amended Complaint, seeking recovery for breach of contract, breach of implied warranty of suitability, negligence, negligent misrepresentation, fraud, fraudulent inducement, statutory fraud, constructive eviction, and nuisance (Dkt. #14 at ¶¶ 37–132).

Defendant has filed the present Motion, seeking to dismiss all of Plaintiff's claims on a variety of grounds (Dkt. #24). Plaintiff has filed a Response, arguing against the dismissal of its claims (Dkt. #33). Defendant has replied (Dkt. #37). As the Motion is now ripe for adjudication, this Court addresses each of Defendant's arguments in turn.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

3

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I.    Statute of Limitations

As noted above, Plaintiff has sued Defendant for breach of contract, breach of implied warranty of suitability, negligence, negligent misrepresentation, fraud, fraudulent inducement, statutory fraud, constructive eviction, and nuisance (Dkt. #14 at ¶¶ 37–132). Both parties agree that each of these causes of action fall under either a two- or four-year statute of limitations.[1] Because Plaintiff filed suit on January 31, 2024, Plaintiff's claims will be barred unless they accrued on or after either January 31, 2022 or January 31, 2020. Under Texas law, claims accrue "and the applicable limitations period begins to run 'when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Delhomme v. Caremark RX Inc.*, No. 3:05-CV-505-R, 2006 WL 1880504, at *3 (N.D. Tex. July 7, 2006) (quoting *S.V. v. R. V.*, 933 S.W.2d 1, 3 (Tex. 1996)); *see also Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015) ("Generally a cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." (citation omitted)).

To succeed on its statute of limitations defense at the summary judgment stage, Defendant bears the burden of establishing: "(1) when the cause of action accrued, and (2) that the plaintiff

---

[1]  *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (noting the general four-year statute of limitations for breach of contract claims); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 353 (Tex. App.— Beaumont 2010, pet. denied) (noting the four-year statute of limitations for breach of express or implied warranty claims); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (noting the two-year statute of limitations for negligence and negligent misrepresentation claims); *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 628 (Tex. App.— Fort Worth 2005, no pet.) (noting the four-year statute of limitations for fraud claims); *Bagby 3015, LLC v. Bagby House, LLC*, 674 S.W.3d 609, 620 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (suggesting that the four-year statute of limitations for a breach of the covenant of quiet enjoyment claim applies to a constructive eviction claim); *Yalamanchili v. Mousa*, 316 S.W.3d 33, 37 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting the two-year statute of limitations for nuisance and trespass claims).

brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2004)). "Furthermore, to succeed on limitations at the summary-judgment stage, the movant 'must also conclusively negate application of the discovery rule and any tolling doctrines pleaded as an exception to limitations.'" *Gill v. Hill*, 688 S.W.3d 863, 868 (Tex. 2024) (quoting *Draughon*, 631 S.W.3d at 85), *cert. denied*, 145 S. Ct. 274 (2024).

Defendant has raised a variety of evidence to support its defense that Plaintiff's claims accrued many years prior to either 2022 or 2020. Specifically, Defendant relies upon the following facts:

(a)    In May 2023, Plaintiff emailed Defendant to complain of the odor issue, writing that it had "always had this problem in last [sic] 7 years but now is [sic] even stronger!" (Dkt. #24-4).

(b)    In September 2017, Plaintiff complained to Defendant that "there are multiple points of the roof where are liking [sic] every time that it is raining" (Dkt. #24 at 3).

(c)    In December 2017, Plaintiff complained about leaks occurring in "the same spot of [sic] the last time " (Dkt. #24 at p. 3).

(d)    In February 2018, Plaintiff emailed Defendant, stating "[t]his is to remind you again about the roof leaking from the same spot . . . . [e]very time it is raining, then we have this problem" (Dkt. #24-8).

(e)    In September 2018, Plaintiff emailed Defendant "regarding the roof leaking in the kitchen" (Dkt. #24-7 at p. 1).

(f)    Plaintiff filed an affidavit admitting that Plaintiff had complained about odors and leaks "throughout the course of the lease" (Dkt. #24 at p. 4).

(g)    Plaintiff's initial disclosures state that Plaintiff seeks damages for injuries starting in March 2016 (Dkt. #24 at p. 5).

In response, Plaintiff argues that three doctrines prevent the statute of limitations from barring its claims: the discovery rule, the affirmative defense of fraudulent concealment, and the continuing torts exception. Because the Court finds that there are genuine issues of material fact as to Plaintiff's claim of fraudulent concealment, it declines to dismiss any of Plaintiff's claims on a statute of limitations defense.

## A.    The Odor Issue

Notably absent from Defendant's Motion is any detailed evidence pertaining to: (a) when Plaintiff first complained of the odor issue; (b) when Defendant first received notice of the odor issue; or (c) when Defendant first attempted to repair the odor issue. While Defendant has raised some evidence indicating that Plaintiff has used vague phrases such as "shortly" or "throughout the term of the lease" to describe multiple repair attempts pertaining to the odorous stench, Defendant has nevertheless failed to conclusively establish when certain causes of action for that injury actually accrued under a fair review of the record (Dkt. #24 at p. 3). *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012) ("The point at which an odor moves from unpleasant to insufferable or when noise grows from annoying to intolerable 'might be difficult to ascertain, but the practical judgment of an intelligent jury [is] equal to the task.'" (quoting *Merrill v. Taylor*, 10 S.W. 532, 534 (1888)). This lack of evidence becomes critical when the Court analyzes a variety of Plaintiff's claims, such as the violation of the implied warranty of suitability, which by its elements is implicated when a lessee can show "that a latent defect in the facilities existed at the inception of the lease, that the facilities were vital to the use of the premises for the intended purposes, and *that the lessor failed to repair the defect.*" *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 340 (Tex. 2011) (emphasis added). Thus, after close review of Plaintiff's Fourth Amended Complaint and the summary judgment evidence presented, the Court finds that

Defendant has failed to establish that the statute of limitations bars Plaintiff's negligence, breach of the implied warranty of suitability, nuisance, or constructive eviction claims regarding the odor issue. Importantly, this finding does not shield those claims against other methods Defendant uses to dispose of Plaintiff's claims. *See infra* Section(IV).

> ### B.    The Discovery Rule

The discovery rule is a limited exception to the statute of limitations. *See Comput. Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 455 (Tex. 1996). "Texas courts apply the discovery-rule exception to defer the accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Doe v. Linam*, 225 F. Supp. 2d 731, 735 (S.D. Tex. 2002). The narrow application of the discovery rule is thus limited to those cases "where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Altai*, 918 S.W.2d at 456.  The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)).

Defendant has presented a plethora of evidence highlighting Plaintiff's repeated acknowledgment of the pungent odor and faulty roof issues prior to 2022 or 2020. Plaintiff attempts to counter Defendant's presentation by emphasizing the difference between a party's recognition of a mere problem and a party's recognition of a specific and actionable "injury." In so doing, Plaintiff cites to an affidavit and a declaration and argues that Defendant has only raised evidence that Plaintiff was aware of the mere source of its injury (the odor and leaky roof), not that it was aware of its true injury, which allegedly occurred "when Defendant failed and refused to make any further attempts to repair the roof and alleviate the odor after having made repeated false

representations" (Dkt. #33 at p. 11; Dkt. #33-17 at p. 3). As to potential application of the discovery rule, Plaintiff's argument highlights a distinction without a difference.

The evidence raised by Defendant indicates that Plaintiff had knowledge of the leaking roof and the presence of an odor for at least seven years prior to this lawsuit (Dkt. #33-4; Dkt. #33-5). It further indicates that Plaintiff was aware of Defendant's continued failure to remedy either the odor or the leaking roof (Dkt. #33-6). Plaintiff seeks damages to compensate it for injuries related to the odor and water damage as far back as 2016, and has not limited its pleadings in a manner consistent with the notion that its actual "injury" constitutes Defendant's final refusal to continue its repair attempts in 2023. *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 435 (Tex. App.—Fort Worth 1997, pet. denied) ("[T]he test is not discovery of the *cause* of the injury; rather, the test is discovery of the injury itself.").

Even if application of the discovery rule was warranted under the facts of this case, Plaintiff still had sufficient knowledge of the facts surrounding its legal injury for its claims to accrue prior to 2020. *See, e.g.*, *Turner v. Home Depot, Inc.*, No. 6:18-CV-509-JCB-KNM, 2019 WL 13253384, at *6 (E.D. Tex. Oct. 22, 2019) ("Plaintiffs . . . fail to point to evidence in the record showing that the leaks—observable since 2009—should not have put them on notice that a legal injury occurred. The law does not require that a claimant know the extent of damages or that all damages have occurred. The law requires that a party exercise reasonable diligence in investigating harms."). Insofar as Plaintiff seeks damages related to injuries which persisted despite several repair attempts, and were caused by: (a) a repugnant odor so foul that it repeatedly turned away patrons from the Property altogether; and (b) rainwater damage from a leaky roof "to such an extent that the business had to be closed," Plaintiff has not provided evidence that shows it was "difficult for the injured

party to learn of the negligent act or omission" which gave rise to its injuries. *Willis*, 760 S.W.2d at 645 (Tex. 1988).

Plaintiff's nondescript affidavit and declaration are simply "not the type of significant probative evidence required to defeat summary judgment" under the circumstances presented. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (citation omitted). As a result, the discovery rule does not prevent the statute of limitations from barring Plaintiff's claims. *See Beltway Park Baptist Church, Inc. v. Bolton*, No. 11-18-00049-CV, 2020 WL 868069, at *3 (Tex. App.—Eastland Feb. 21, 2020, no pet.) (finding that a plaintiff who suffered by means of a leaking roof was not subject to an "inherently undiscoverable" injury because he knew about the "alleged construction defects for five years before filing suit").

### C.    Fraudulent Concealment

Although "it is all-too-common that the discovery rule is confused with fraudulent concealment," the facts of this case require the Court to parse the differences between the two doctrines with exacting precision. *S.E.C. v. Bartek*, 484 F. App'x 949, 955 n.7 (5th Cir. 2012) (per curiam). Fraudulent concealment differs from the discovery rule in that it "is an equitable tolling doctrine, not an accrual doctrine." *Id.* (quoting *S.E.C. v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011), *rev'd*, 568 U.S. 442 (2013)). Thus, while the discovery rule determines when a plaintiff's claims accrue in the first place, fraudulent concealment offers a plaintiff the ability to toll the statute of limitations "'until the [defendant's] fraud is discovered or could have been discovered with reasonable diligence.'" *Jenkins v. Tahmahkera*, 151 F.4th 739, 750 (5th Cir. 2025) (quoting *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015)). The underlying purpose of the affirmative defense is to toll limitations "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6 (Tex. 1996).

10

The fraudulent concealment defense applies only where "the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (first citing *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999); then citing *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977) (per curiam)). Not only that, but "[t]he concealment must be through affirmative acts—'the defendant must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry.'" *Lewis v. Danos*, 83 F.4th 948, 955 (5th Cir. 2023) (citation modified) (quoting *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1529 (5th Cir. 1988)).

Plaintiff argues that Defendant knew it had wronged Plaintiff "and concealed the fact that repairs that were made, if any were, were not sufficient to correct the problems" (Dkt. #33 at p. 13). Plaintiff's affidavit establishes that Plaintiff complained to Defendant about the odor and the leaking roof "throughout the course of the lease" (Dkt. #33-10 at p. 1–2). It further establishes that Defendant would "send someone to make repairs and represent to [Plaintiff] that the smell would be abated and repaired" and would similarly "send someone to repair the roof leaks and would represent to [Plaintiff] that the roof leaks had been repaired" (Dkt. #33-10 at pp. 1–2). The parties would presumably entertain this cyclical process for years—Plaintiff would complain about the odor and roof, Defendant would attempt repairs and make representations, Plaintiff would find Defendant's repairs and representations to be ineffective, which would in turn lead Plaintiff to file yet another complaint (*See* Dkt. #33-10 at p. 1).

This troublesome relationship suggests that Plaintiff made little to no effort to conduct a reasonable inquiry into either Defendant's reparative efforts or its interpretation of the permanency of the two issues. This suggestion is only strengthened by the fact that Plaintiff had knowledge of

the repeated appearance of the odor and leaking roof. *Brent v. Daneshjou*, No. 03-04-00225-CV, 2005 WL 2978329, at *3 (Tex. App.—Austin Nov. 4, 2005, no pet.) ("Knowledge of facts that would make a reasonable person inquire and discover a concealed cause of action is equivalent to knowledge of the cause action for limitations purposes."). Plaintiff's lack of evidence and failure to conduct a reasonable inquiry in the face of its continued harm is damaging to its defense, as "[o]n summary judgment, the non-movant has the burden to come forward with proof raising an issue of fact on fraudulent concealment." *Hou. Endowment Inc. v. Atl. Richfield Co.*, 972 S.W.2d 156, 163 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *see also Yesteryear Auto LLC v. Synergistic Int'l LLC*, No. 616CV00441ADAJCM, 2018 WL 7377942, at *6 (W.D. Tex. Dec. 21, 2018).

Nevertheless, there remains a genuine issue of material fact regarding this defense. The record shows that Defendant was repeatedly slow to respond to Plaintiff's requests for repair and continuously made assurances that the odor and roof issues were resolved when they were not. As "a defendant may conceal facts either by active misrepresentation or passive silence," the Court finds that Plaintiff has raised sufficient evidence to support a jury question on its fraudulent concealment defense. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 770–71 (N.D. Tex. 2017) (citation modified) (internal quotations omitted) (quoting *Klein v. O'Neal, Inc.*, No. 7:03-CV-102-D, 2008 WL 2152030, at *3 (N.D. Tex. May 22, 2008)). In making such a determination, the Court puts significant emphasis on the length of the relationship between the parties and the exceptional number of attempted repairs in the context of the summary judgment evidence. *Compare Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 367 (5th Cir. 1988) ("three different roofers did not succeed in repairing the roof; without even knowing what was wrong with the roof, we do not think a reasonable jury could conclude simply from the fact that the roof was

not fixed that Sears knew it could not be fixed."). Because Defendant has not conclusively negated the application of Plaintiff's fraudulent concealment defense, Plaintiff's claims will survive Defendant's statute of limitation defense at this stage.

### D.    Continuing Torts

The continuing torts doctrine differs from the affirmative defense of fraudulent concealment in that it modifies when a specific tort accrues. Specifically, it holds that "[a] cause of action for a continuing tort does not accrue until the defendant's tortious act ceases." *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied). While "[t]he Texas Supreme Court has never fully adopted the continuing violations doctrine . . . the Fifth Circuit believes the Texas Supreme Court would adopt the doctrine and this Court follows suit." *Curtis v. Cerner Corp.*, 621 B.R. 141, 164 (S.D. Tex. 2020). Plaintiff applies the doctrine in broad strokes, boldly claiming that "the statute of limitations for *any* of the causes of action pleaded have not run" because each instance of the foul odor and leaking roof constitutes a continuing tort injury (Dkt. #33 at p. 14). Plaintiff further argues that each representation by Defendant regarding repairs similarly constitutes a continuing tort injury (Dkt. #33 at p. 14). Plaintiff's argument concludes by stating that "[o]nly the passage of time and the failure of the Defendant to perform repairs as represented would reveal the existence of the injury" (Dkt. #33 at p. 14).

As an initial matter, and "[a]bsent any authority indicating otherwise, the Court declines to apply the continuing tort doctrine to a non-tort claim." *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 218CV00014JRGRSP, 2019 WL 4392525, at *2 (E.D. Tex. June 11, 2019), *report and recommendation adopted*, No. 218CV00014JRGRSP, 2019 WL 2865079 (E.D. Tex. July 3, 2019). Thus, Plaintiff's *breach of contract* claims are not covered by its invocation of the continuing *tort* doctrine. Additionally, because Plaintiff has alleged purely economic damages, its breach of implied

13

warranty of suitability sounds in contract and therefore does not fall under the continuing tort exception. *See JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008); *see also Charlie Thomas Ford, LTD v. Ford Motor Co.*, No. 14-19-00844-CV, 2021 WL 786600, at *6 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) ("Breach of express or implied warranty claims, with no allegations of personal injury or death or damage to other property, sound in contract.").

Plaintiff's negligent misrepresentation and fraud claims similarly lie outside the realm of the continuing tort doctrine, as Plaintiff has limited them to statements and actions conducted prior to Plaintiff's leasing agreement.[2] *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) ("[a] continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action." (internal quotations omitted) (quoting *First Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied))). The continuing tort doctrine is not applicable to those causes of action which do not involve repeated wrongful actions, and this simple fact renders the doctrine inapplicable to Plaintiff's negligent misrepresentation and fraud claims. *Worden v. Salvaggio*, No. SA-22-CV-00286-XR, 2022 WL 1913617, at *4 (W.D. Tex. June 3, 2022) ("[A] continuing tort arises only when the wrongful conduct is repeated over a period of time.").

Three claims remain to be considered under the continuing tort doctrine: negligence related to the leaking roof, constructive eviction related to the leaking roof, and nuisance related to the

---

[2]  Plaintiff centers its negligent misrepresentation claim around Defendant's representations made "when Plaintiff was looking for a commercial space suitable for purchasing a viable business" (Dkt. #14 at ¶ 80). Plaintiff limits its common law fraud claim in a similar manner, restricting it to Defendant's representations "to Plaintiff that the Property would be a good Property for Plaintiff's business to continue to operate within, selling food and alcohol" (Dkt. #14 at ¶ 90). Plaintiff also limits its fraud in the inducement claim to Defendant's representations "to Plaintiff that the Property would be a good Property for Plaintiff's business operations" (Dkt. #14 at ¶ 100). Finally, Plaintiff centers its statutory fraud claim exclusively around representations and actions "[l]eading up to the entry of the Parties into the Contract" (Dkt. #14 at ¶ 110).

leaking roof.[3] The Court must now determine whether each and every instance of odor, rainwater, and guarantee of repair constitutes a continuing tort capable of modifying the general rule of claim accrual. In making such a determination, it has been established that "care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortious acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not." *Rogers v. Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied).

As Plaintiff has not cited any caselaw in support of its interpretation of these three claims as "continuing torts," the Court turns to a case repeatedly highlighted by Defendant's brief: *Beltway*, 2020 WL 868069, at *1. In *Beltway*, a Texas court analyzed whether a plaintiff property owner was entitled to the continuing tort doctrine where it had hired a construction company to make improvements to its property. *Id.* The construction company's changes to the property resulted in a leaking roof, and it represented to the property owner that the roof would be fixed. *Id.* When the roof went without repair for years despite the construction company's repeated representations, the plaintiff filed suit against the entity under multiple causes of action, including negligence and fraud. *Id.* at *1, 6. The court ultimately found that "[t]he continuing-tort doctrine is inapplicable in this case because Beltway's alleged injury arises from a single act—[the] construction of improvements on [the] property." *Id.* at *6.

Under the relevant causes of action, Plaintiff seeks recovery for injuries brought about by Defendant's failure to repair and maintain the Property in a manner that remedied the Property's

---

[3]  Evidence of the odor was insufficient to permit this Court to decide Plaintiff's negligence, constructive eviction, and nuisance claims based on Defendant's statute of limitations defense. *See supra* Section (I)(A).

odor and leaking roof issues. Defendant's ongoing attempts to repair the property and its assurances made in relation to those attempts, while numerous, actually constitute multiple manifestations of its original wrongful act: its failure to repair and maintain the property. *See, e.g.*, *MCR Oil Tools, LLC v. DMG Mori USA, Inc.*, No. 4:20-CV-00560-O, 2020 WL 13133311, at *7 (N.D. Tex. Sept. 15, 2020) ("[e]ven viewing all well-pleaded allegations as true and drawing all reasonable inference in its favor, the Court concludes that MCR has failed to plead a continuing tort because MCR fails to identify or allege a distinct injury from the [multiple] repairs [of a product].""). Plaintiff has not raised (in this Court) an independent claim seeking damages flowing from Defendant's actual repair efforts, but has instead raised a complaint regarding Defendant's generalized failure to identify and remedy the odor and roof problems.[4] As late as 2017, Plaintiff knew of significant water-leakage problems with the Property such that it was on notice of any potential claims. Thus, Plaintiff suffered from a continuing injury arising out of one wrongful act: Defendant's failure to maintain and repair the property. Plaintiff therefore cannot avail itself of the continuing torts doctrine.

---

[4] The Texas Supreme Court highlighted the options available to plaintiffs seeking independent recovery on the basis of a failed repair in *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, stating that "[f]aulty repairs or false assurances of repair are already independently actionable under current law—either for breach of the implied warranty applicable to repair services, or as DTPA laundry-list violations." 146 S.W.3d 79, 95–96 (Tex. 2004). Plaintiff originally sought to recover for Defendant's specific repair attempts under a DTPA claim before the 481st District Court of Denton County, Texas, but that claim was ultimately dismissed (Dkt. #24 at p. 4 n.1). Furthermore, Plaintiff has not pleaded a violation of the "implied warranty of workmanlike repairs of tangible goods or property," which has been distinguished from the implied warranty claim brought by Plaintiff, which constitutes "the implied warranty that leased premises are suitable for their intended commercial purpose." *Nghiem v. Sajib*, 567 S.W.3d 718, 724 n.33 (Tex. 2019). While the implied "warranty for repair services [is] not breached until further repairs [are] refused," the implied warranty of suitability becomes actionable upon a Plaintiff's ability to show, in relevant part, that "the lessor failed to repair the defect." *PPG*, 146 S.W.3d at 96; *Italian Cowboy*, 341 S.W.3d at 340. Thus, "consumers who discover defects and ask a seller to repair them do not need to toll limitations on the initial warranty claim, as they have a new limitations period relating to the repairs." *PPG*, 146 S.W.3d at 96; *see also Austin Co. v. Vaughn Bldg. Corp.*, 643 S.W.2d 113, 115 (Tex. 1982). In sum, the continuing torts doctrine may very well apply to causes of action not currently brought before the Court.

Moreover, multiple Texas courts "have recognized the continuing-tort doctrine is rooted in a plaintiff's inability to know ongoing conduct is causing her injury; thus, the rationale for the doctrine no longer applies if the claimant has discovered her injury and its cause and the statute commences to run upon discovery." *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because Plaintiff (a) knew of the leaking roof for years; (b) knew of the odor at least "throughout the term of the lease" and beyond; and (c) recognized Defendant's inability to address the issues, it cannot rightfully avail itself of the continuing tort doctrine. *See, e.g.*, *Curtis*, 621 B.R. at 164–65 ("The Court holds that the continuing violations doctrine does not suspend accrual of Plaintiff's claims because Plaintiff was aware that [defendant's] delivery in 2014 was causing injury and simply did not bring suit. Unlike the cases in which the Plaintiff was unable to know of the injury, Plaintiff here was well-aware of the injury."). To hold otherwise would permit Plaintiff to use Defendant's "faulty repairs and faulty assurances" as an improper basis for tolling the statute of limitations, which remains "a practice that is not permitted." *Beltway*, 2020 WL 868069, at *6.

## II.    Plaintiff's Proposed Damages

In the next portion of its Motion, Defendant argues that the Contract bars Plaintiff's recovery of consequential or indirect damages, including lost profits and loss of customers, clients, and goodwill (Dkt. #24 at p. 17). Defendant also argues that Plaintiff is unable to recover lost investments (Dkt. #24 at p. 18–19). Plaintiff responds that the terms of the Contract do not prevent it from seeking consequential damages through non-contractual causes of action (Dkt. #33 at p. 15). Plaintiff further argues that lost profits are recoverable because they constitute Plaintiff's actual, as opposed to consequential, damages (Dkt. #33 at p. 16).

At its core, this specific dispute questions whether Plaintiff has effectively waived its recovery of actual profits and investments by assenting to the terms of the Contract. *See McKinney/Pearl Rest. Partners*, 241 F. Supp. 3d at 767. Waiver is an affirmative defense, and the party alleging waiver carries the burden of proof at summary judgment. *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam). While Defendant bears the ultimate burden of proof on the issue of waiver, the burden of production shifts to Plaintiff if Defendant makes a prima facie showing that there is no genuine dispute as to the facts underpinning the defense. *Walkup v. Tyson Foods, Inc.*, No. 7:13-CV-0150-O, 2014 WL 4798443, at *3 (N.D. Tex. Sept. 26, 2014).

In its Motion, Defendant has introduced evidence that the Contract contained multiple iterations of waivers, including the following pertinent language:

> If Landlord shall fail to perform any covenant, term or condition of the Lease upon Landlord's part to be performed, and if as a consequence of such default Tenant shall recover a money judgment against Landlord, such damages shall only be for actual compensatory damages, and Tenant will not seek inferred, presumed, special, incidental, exemplary, punitive, consequential or indirect damages, or any of the like, of any kind or nature, no matter how denominated, titled or labeled, whether foreseen or unforeseen, including, without limitation, damages for loss of revenue, loss of profits, loss of opportunity, or loss of customers, clients, or goodwill . . . .

(Dkt. #24 at p. 17).

By its first amended initial disclosures, Plaintiff has acknowledged that it seeks both "Lost Profits during the period of 2016-2024" and "Lost Investments during the period of 2016-2023," which appears to implicate the above-referenced language in the Contract (Dkt. #24-12 at p. 2). The Court addresses each proposed recovery below.

### A.    Lost Profits and Consequential Damages

The primary issue with Defendant's lost profit argument is that "[l]ost profits may be either direct or consequential damages, depending on their nature." *Hess Corp. v. Schlumberger Tech. Corp.*, No. CV H-16-3415, 2020 WL 6526079, at *57 (S.D. Tex. Nov. 5, 2020) (internal quotations omitted) (quoting *Cherokee Cnty. Cogeneration Partners, L.P. v. Dynegy Mktg. and Trade*, 305 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). "Profits lost on the contract itself are direct damages, whereas, profits lost resulting from a breach are consequential damages." *Harris County v. Pulice Constr., Inc.*, No. 14-23-00818-CV, 2024 WL 4052762, at *6 (Tex. App.—Houston [14th Dist.] Sept. 5, 2024, no pet.). However, "lost profits that represent the benefit-of-the-bargain measure of damages required to restore the plaintiff to the economic position he would have enjoyed if the contract had been performed are 'direct' damages when shown to be 'conclusively presumed' to have been foreseen by the parties as a usual and necessary consequence of a breach." *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 181 (Tex. App.—Fort Worth 2012, no pet.).

Because Defendant has not provided evidence to suggest that direct lost profit damages are threatened by the Contract, the Court assumes that Plaintiff will be permitted to recover lost profits under its breach of contract claims if those lost profits meet the standard expressed in *DaimlerChrysler. Id.*; *see also Harper v. Wellbeing Genomics Pty Ltd.*, No. 03-17-00035-CV, 2018 WL 6318876, at *10 (Tex. App.—Austin Dec. 4, 2018, pet. denied). Because such a determination is best made upon a court's consideration of how the alleged lost profits "relate to the nature of the breaches that were alleged *and proved at trial*—i.e., did the damages flow 'necessarily' from the breach, or only 'naturally,'" the Court declines to answer this question under the sparse evidence currently before it at the summary judgment stage. *Harper*, 2018 WL 6318876, at *11 (emphasis

added). Rather, because the express terms of the Contract fail to defeat Plaintiff's fact question over damages, the question of lost profits should be raised, if warranted, at the conclusion of trial. *See, e.g.*, *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, No. CV 16-1131, 2017 WL 4366855, at *4 (E.D. La. Sept. 29, 2017) ("Because the HCA Contract is ambiguous as to whether lost profits of the kind claimed by Waypoint are consequential, the Court looks to the intent of the parties. . . . Neither party has submitted evidence to prove contractual intent, however. As a result, there remains a dispute about a material fact at issue in the motion.").

Furthermore, the Court declines to find that the Contract's exclusion of consequential damages extends to Plaintiff's damages for fraud and fraudulent misrepresentation. The language of the Contract is explicitly limited by the introductory phrase "[i]f Landlord shall fail to perform any covenant, term, or condition *of the Lease* . . . ." (Dkt. # 24 at p. 17). This language is insufficient to carry Defendant's burden on the affirmative defense of waiver. *See McKinney/Pearl Rest. Partners*, 241 F. Supp. 3d at 767 (declining to extend a consequential damages waiver to tort damages where the waiver provided that "[i]n no event shall Landlord be liable to Tenant for consequential, punitive or special damages (or any similar types of damages) by reason of a failure to perform (or a default) by Landlord hereunder or otherwise"); *see also Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 674 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("[A] plaintiff is not precluded from asserting a tort cause of action solely because his damages are analogous to the damages sought in a contractual claim."). As a result, Plaintiff is permitted to seek recovery for lost profits.

## B.    Lost Investments

Defendant asserts that Plaintiff's second class of proposed damages, the "lost investments during the period of 2016–2023," are unrecoverable as a matter of law (Dkt. #24-12 at p. 2). It makes three claims in support of its assertion. First, it argues that the proposed lost investments

constitute an impermissible attempt at "double-dipping," as indicated by Plaintiff's provided expert report (Dkt. #24 at p. 18). Second, it argues that Plaintiff is seeking to recover on behalf of investments made by its managerial owners and that it lacks sufficient standing to do so (Dkt. #24 at p. 18). Finally, it argues that Plaintiff has not sufficiently distinguished the investments related to the odor and leaking roof issues with the investments that were necessary to merely operate the business (Dkt. #24 at p. 19). In its Response, Plaintiff provides a total of two sentences directly addressing the "lost investments" issue, which the Court here repeats in full: "Plaintiff's calculation of lost investments is a remedy which is not the subject matter of the Lease; therefore supporting the existence of Plaintiff's tort causes of action. When the loss or damage does not relate to the subject matter of the contract, the action may be in tort" (Dkt. #33 at p. 2). Outside of these sentences, Plaintiff simply labeled all of its proposed damages as "actual compensatory damages" and moved on (Dkt. #33 at p. 16). In the absence of a thorough response on the matter, the Court undertakes its own assessment of the recoverability of Plaintiff's "lost investments."

The Texas Supreme Court has previously made it clear that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). This rule extends to cover simple fraud causes of action. *See, e.g.*, *DDMS Techs. v. Anacomp, Inc.*, No. CIVA H-06-0070, 2006 WL 3099632, at *5 (S.D. Tex. Oct. 30, 2006) ("Insofar as DDMS is alleging fraudulent inducement or simple fraud, however, the independent injury doctrine is inapplicable in this case."). Additionally, a plaintiff will be permitted to recover damages under its negligent misrepresentation theory if it "can establish that [it] suffered an injury

21

that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x. 861, 865 (5th Cir. 2013) (internal quotations omitted) (quoting *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)).[5]

Because Plaintiff has pleaded fraud, fraudulent inducement, and negligent misrepresentation, Plaintiff is entitled to seek recovery for damages resulting from Defendant's wrongful actions and omissions under those theories. *See DDMS Techs.*, 2006 WL 3099632, at *5. Such recovery under those three causes of action could conceivably include losses for certain investments that Plaintiff undertook. Thus, the Court is unwilling to find that "lost investment" damages do not constitute a genuine issue for trial. Defendant's arguments regarding an expert's interpretation of these damages, including the issue of standing and of the specific calculation of Plaintiff's "lost improvements," are matters more appropriately reserved for a *Daubert* hearing.

In making this determination, the Court recognizes that Plaintiff has limited its negligent misrepresentation claim to Defendant's statements made prior to the Contract (Dkt. #14 at ¶¶ 77–88). Although the Court is skeptical of Plaintiff's ability to distinguish its damages for negligent misrepresentation from contractual damages under the facts presented, it declines to hold that Plaintiff is not entitled to try. *See, e.g.*, *Williams v. City of Midland*, 932 S.W.2d 679, 685 (Tex. App.—El Paso 1996, no writ) ("[I]n a cause of action for negligent misrepresentation, the plaintiff

---

[5]  When two parties have contractual privity, fraud and negligent misrepresentation are far from interchangeable:

> Unlike cases of intentional fraud where plaintiffs can recover the same economic losses as might be recoverable in a breach of contract case . . . on claims of negligent misrepresentation where the misrepresentations occur either during conversations leading up to the formation of a contract or where the misrepresentations occur during the performance of the contract, courts are concerned that they not permit contract damages to be recoverable in a tort claim.

JAMES M. UNDERWOOD, ECONOMIC LOSS RULE: CLEANING UP THE MIDDLE 22 (2019)

can generally only recover the amount necessary to compensate he or she for direct pecuniary loss.").

In sum, the Court finds that the Contract does not, by its terms, preclude Plaintiff from seeking either (a) direct lost profits stemming from a breach of contract; or (b) further recovery under tort law. The Court further finds that Plaintiff is permitted to seek recovery for lost investments. Accordingly, Plaintiff may seek recovery for both of its proposed damages at trial. Whether it will ultimately succeed in receiving them is another matter altogether.

### III.    Waiver and Release

In its Motion, Defendant recounts the contractual history behind the present suit, asserting the following as facts sufficient to waive all of Plaintiff's claims:

(a)    In 2016, Plaintiff took over the lease for the Property and agreed in writing to accept it "in an 'as-is,' 'where is,' and 'with all faults' condition" (Dkt. #24 at p. 19).

(b)    In March 2019, Plaintiff amended the lease and represented that the Property was suitable for its use, that Defendant had not breached the Lease, and that Plaintiff had no claims or causes of action as of that date (Dkt. #24 at p. 20).

(c)    In September 2020, Plaintiff and Defendant entered into a Letter Agreement for Payment of Past Due Amounts (the "Letter Agreement"). In that Letter Agreement, Plaintiff warranted that "Landlord is not in default of any of its obligations under the Lease, and Tenant waives any claims, defenses and offsets it may have against Landlord as of the date of this Letter Agreement" (Dkt. #24 at p. 21).

Defendant argues that dismissal is warranted because Plaintiff has waived any claim arising from the odor and leaking roof issues, which it recognized early in the relationship between the parties. In its response, Plaintiff claims that Defendant has failed to conclusively establish that the waiver applies to the claims it has brought before the Court, and that Defendant has not presented sufficient evidence to support a finding against Plaintiff's fraud claims.

After a careful review of the record and the arguments presented, and in light of Plaintiff's fraudulent concealment defense, the Court is not convinced that Defendant has met its burden demonstrating that there are no material issues of fact regarding Plaintiff's alleged waiver of its claims. As a result, the Court finds that summary judgment is not appropriate on the basis of Plaintiff's alleged waiver or release of its claims.

## IV.    Negligence and Nuisance

At the conclusion of its Motion, Defendant claims that Plaintiff cannot recover under its theories of negligence and nuisance (Dkt. #24 at pp. 21–22). Plaintiff disagrees, arguing that both causes of action must survive summary judgment (Dkt. #33 at pp. 21–22). The Court addresses each argument below.

### A.    Negligence

Defendant first argues that Plaintiff's negligence cause of action is exclusively founded upon a contractual duty, and that it therefore must be dismissed. Plaintiff, in turn, describes its negligence claim as a "contort," and attempts to survive summary judgment by relying on the age-old notion that tort duties may accompany a duty created by contract (Dkt #33 at p. 24). *See Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947) ("[W]here there is a general duty even though it arises from the relation created by, or from the terms of a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence." (citation omitted)).

Plaintiff's argument is undermined by the evolution of this doctrine over time. Indeed, the Texas Supreme Court has clarified its position on the interplay between contractual and tort duties in a manner relevant to the facts of this case in 1991:

24

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

To determine whether a given cause of action is subsumed by a breach of contract claim and thus appropriately dismissed at summary judgment, the Court must consider two questions: first, whether defendant's conduct generates liability solely because it breaches the parties' agreement; and second, whether "the only loss or damage is to the subject matter of the contract." *Id.* at 494–95. Where the second consideration is answered in the affirmative, a claim ordinarily sounds in contract, not tort. *See id.*

In addressing the first consideration, Plaintiff lists two purportedly "independent" and relevant sources of liability: the "common-law duty to perform [a contract] with care," and "the duty to provide quiet enjoyment of the Property," which Plaintiff notes is not contained in the language of the Contract (Dkt. #33 at p. 22). Neither source is sufficient to support Plaintiff's negligence cause of action in the face of *Delaney*, as neither source implicates conduct by the Defendant that would create liability "independent of the fact that a contract exists between the parties." *Id.* This fact is readily apparent—the first source expressly references the "perform[ance]" of the contractual source of the duty. *See, e.g., Johnson Kidz, Inc. v. Veritex Cmty. Bank, N.A.*, No. 05-16-00110-CV, 2017 WL 1967660, at *5 (Tex. App.—Dallas May 12, 2017, no pet.) ("Veritex's duty to repair the Property (and any communication relating to the timing of repairs) arose solely from the contract."); *see also R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 710 (S.D. Tex. 2020). Similarly, the second source, if untethered from its contractual roots,

would impose a universal duty inconsistent with the general rule that "there can be no cognizable negligence absent a duty to act." *Curb Recs. v. Adams & Reese L.L.P.*, 203 F.3d 828, *4 (5th Cir. 1999) (per curiam). While the Texas Supreme Court has previously recognized a "generalization" that "obligations imposed by law are tort obligations," a breach of the covenant of quiet enjoyment nevertheless presupposes the existence of some form of contractual privity. *DeLanney*, 809 S.W.2d 493, 495 n.2 (Tex. 1991); *see Daftary v. Prestonwood Mkt. Square, Ltd.*, 404 S.W.3d 807, 815 (Tex. App.—Dallas 2013, pet. denied) (noting the necessity of the landlord-tenant relationship in a claim for breach of the covenant of quiet enjoyment, emphasizing that the "landlord act[] in a way to interfere with the tenant's enjoyment of the premises."); *see also Del Castillo v. PMI Holdings N. Am. Inc*, No. 4:14-CV-03435, 2016 WL 3745953, at *7 (S.D. Tex. July 13, 2016) ("There is nothing in the pleadings to suggest that Kinder Morgan and Plaintiffs were ever in a landlord-tenant relationship. Therefore, Plaintiffs['] claim against Kinder Morgan for breach of quiet enjoyment is dismissed."); *Hoffmann v. Chapman*, 170 S.W.2d 496, 498 (Tex. App.—El Paso 1942, writ ref'd w.o.m.) ("It is conceded by the parties here, about which there can be no question, that the relation of landlord and tenant is always created by contract, either express or implied.").

In addressing the second consideration, Plaintiff argues that by seeking recovery for investments made on the property, it has sought damage beyond "the subject matter of the contract" and has thus brought its negligence claim beyond the reach of the Contract. *DeLanney*, 809 S.W.2d at 494. However, Plaintiff's proposed recovery for its negligence cause of action is defined in its Complaint solely as "lost business, lost profits, and lost customers . . . ." (Dkt. #14 at p. 18). Plaintiff's negligence damages thus constitute economic loss stemming from Defendant's failure to provide Plaintiff with a sufficient Property and therefore cannot support a claim for

negligence independent of the Contract. *See Johnson Kidz*, 2017 WL 1967660, at *5. Put another way, "the gist of the action is the breach of the contract," and thus "it is in substance an action on the contract, whatever may be the form of the pleading." *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App.—Tyler 2003, pet. denied). As a result, the Court finds that summary judgment is appropriate on Plaintiff's negligence cause of action.

Importantly, while the Court favors Defendant's interpretation of Plaintiff's negligence claim, it does not go as far as to declare, as Defendant requests, that "Plaintiff's claims sound only in contract: no tort claims survive" (Dkt. #44 at p. 7). On the contrary, the Court has already noted the Texas Supreme Court's contrary opinion on this matter. *See Formosa*, 960 S.W.2d at 47; *see also Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022) ("Fraud is not merely a defense to contract formation, like the doctrine of mutual mistake. . . . [t]he duty not to commit fraud is an 'independent legal duty' that is 'separate from the existence of the contract itself.'" (quoting *Formosa*, 960 S.W.2d at 47)).

As Defendant has previously admitted, Plaintiff seeks recovery for fraud exclusively in the context of pre-contractual actions and representations: "[Plaintiff] also does not dispute that its negligent misrepresentation and fraud claims center solely around alleged pre-Lease statements . . . ." (Dkt. #44 at p. 4). Under these facts, the Court declines to hold that this case is free from tort claims. *See, e.g.*, *RLI Ins. Co. v. Interstate Battery Sys. Int'l, Inc.*, No. 3:20-CV-1888-D, 2021 WL 5164937, at *10 (N.D. Tex. Nov. 5, 2021) (finding that certain claims for negligent misrepresentation which "do not arise from obligations contained in the Agreement or breaches of the Agreement" survived summary judgment).

## B.    Nuisance

The Court approaches a summary judgment challenge to nuisance with an appropriate amount of hesitancy, as the legal term is capable of taking on many forms:

> 'There is no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately from an alarming advertisement to a cockroach baked in a pie. . . .' [t]here is a general agreement that it is incapable of any exact or comprehensive definition, and we shall attempt none here.

*Wales Trucking Co. v. Stallcup*, 474 S.W.2d 184, 186 (Tex. 1971) (citing PROSSER, THE LAW OF TORTS 592 (3rd ed. 1964)).

Although both Plaintiff and Defendant refer to nuisance as a *claim*, the legal term actually constitutes a separate legal *injury* which may be brought under the following three causes of action: (1) intentional conduct causing a nuisance, referred to by the Court as intentional nuisance; (2) negligence; and (3) abnormally dangerous or ultra-hazardous activities causing a nuisance, referred to by the Court as strict liability nuisance. *Dealer Comput. Servs., Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 621–22 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Crostex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 604–09 (Tex. 2016)). Any further reference to a "nuisance claim," then, refers to a "*nuisance-based* claim," or the potential recovery under these three causes of action. *Dealer Computer*, 574 S.W.3d at 622 (emphasis added).

Defendant's approach to Plaintiff's nuisance claim initially mirrors its approach to Plaintiff's negligence claim. That is, Defendant first argues that Plaintiff's nuisance claim sounds in tort and thus is subsumed by Plaintiff's breach of contract cause of action. Defendant's approach varies, however, by raising an additional argument: that Plaintiff has put forward no evidence to support a genuine issue of material fact on its alleged intentional or strict tort liability. Plaintiff, on the other hand, argues once more that "Defendant had duties imposed by law (outside of the

28

Contract) to act with reasonable skill and diligence in performing the contract" and that its nuisance claim is thus sufficiently distanced from the Contract to survive summary judgment (Dkt. #33 at p. 24). Because Plaintiff has pleaded in its Fourth Amended Complaint that "the Defendant created or maintained the [nuisance] condition intentionally, negligently, or by other abnormally dangerous conduct," the Court will look to each of these three legal avenues to determine whether Plaintiff has raised a genuine issue of material fact to support its nuisance claim (Dkt. #14 at p. 24).

The Court dismisses Plaintiff's negligent nuisance cause of action outright. Texas courts have previously declined to entertain a negligent nuisance claim where a party's "cause of action depends entirely on [a] contract to establish a duty and, therefore, the action is one for breach of contract only." *OXY*, 127 S.W.3d at 20; *see also Exxon Corp. v. Tyra*, 127 S.W.3d 12, 15 (Tex. App.—Tyler 2003, pet. denied) (rendering a take-nothing judgment against a party who prevailed solely on a nuisance cause of action because his "cause of action depends entirely on the contracts to establish a duty"). This Court has already determined that Plaintiff's ordinary negligence claim is subsumed by the Contract and must be dismissed. "[T]hus, under Texas jurisprudence, Plaintiff['s] claims for negligent nuisance have no basis in law." *In re Oncor Elec. Delivery Co. LLC*, 694 S.W.3d 789, 801–02 (Tex. App.—Houston [14th Dist.] 2024), *subsequent mandamus proceeding*, 716 S.W.3d 525 (Tex. 2025).

Unlike a negligence nuisance claim, however, both "intentional nuisance and strict-liability nuisance claims do not require proof of the legal duty owed." *Id.* at 802. Thus, the Contract does not control the applicability of these two avenues of recovery—Plaintiff will prevail against

Defendant's Motion if the summary judgment evidence supports the existence of a genuine issue of material fact regarding either cause of action.

"[T]o prove an intentional nuisance, the evidence must establish that the defendant intentionally caused the interference that constitutes the nuisance, not just that the defendant intentionally engaged in the conduct that caused the interference." *Gardiner*, 505 S.W.3d at 605. The requisite intent exists "if the actor desires to cause the 'consequences' of his act, or knows that the 'consequences' are substantially certain to result." *Id.* (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). Alternatively, "to the extent that a claim exists in Texas based on a nuisance created by 'abnormal and out of place conduct,' it arises only out of conduct that constitutes an 'abnormally dangerous activity' or involves an abnormally 'dangerous substance' that creates a 'high degree of risk' of serious injury." *Gardiner*, 505 S.W.3d at 609.

In determining whether Plaintiff's claims are sufficient to survive summary judgment, the Court puts great emphasis on the Texas Supreme Court's finding that nuisance questions are generally reserved for the jury:

> [W]ith regard to liability for causing a nuisance, we briefly note that the questions of whether an interference with the use and enjoyment of property is substantial, whether the effects of such an interference on the plaintiffs are unreasonable, whether the defendant intentionally or negligently created the interference, and whether the interference results from abnormally dangerous activities generally present questions of fact for the jury to decide. . . . A court may decide the issues as a matter of law only if the underlying facts are undisputed or, in light of all the evidence, "reasonable minds cannot differ."

*Gardiner*, 505 S.W.3d at 609 (quoting *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 261 (Tex. 1999)).

After a thorough examination of the record, the Court finds Plaintiff's pleadings insufficient to raise a question of fact as to whether the odor and rainwater damage resulted from abnormally dangerous or ultra-hazardous conduct by Defendant. Repeated repair of a building,

even when conducted in an inefficient or ineffective manner, is not an abnormally dangerous activity giving rise to a nuisance injury for which a Defendant is strictly liable. *See Padgett v. Fieldwood Energy, LLC*, No. 6:18-CV-00632, 2020 WL 524868, at *5 (W.D. La. Jan. 31, 2020) ("Padgett has not alleged any ultra-hazardous activity in this case. Further, it has been held that construction work is not an intrinsically or inherently dangerous activity."). Summary judgment is appropriate on Plaintiff's strict liability nuisance claim on that ground.

However, by construing what little evidence remains in favor of Plaintiff, and in light of the relevant dicta presented by the Texas Supreme Court, the Court finds that Defendant has not met its demanding burden to demonstrate that there are no material issues of fact regarding Plaintiff's intentional nuisance claim. As a result, the Court grants summary judgment exclusively on Plaintiff's negligent nuisance and strict nuisance claims, while leaving Plaintiff's intentional nuisance claim intact.

## CONCLUSION

It is therefore **ORDERED** that Defendant Gator Flower Mound, LLC's Motion for Final Summary Judgment (the "Motion") (Dkt. #24) is hereby **GRANTED in part** and **DENIED in part**.

Furthermore, Plaintiff's negligence claim is **DISMISSED with prejudice**.

Furthermore, Plaintiff's negligent nuisance and strict liability nuisance claims are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**
**SIGNED this 3rd day of February, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE