# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ARCH & ENG, LLC d/b/a Z GRILL AND TAP, § § § *Plaintiff,* § § v. § § GATOR FLOWER MOUND, LLC a/k/a FLORIDA GATOR FLOWER MOUND, LLC, § § § § § *Defendant.* § | Civil Action No. 4:24-cv-1068 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Gator Flower Mound, LLC's Motion to Exclude the Testimony of Alan Someck (the "Motion") (Dkt. #38). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part.**

### BACKGROUND

The factual background of this case has been thoroughly examined in this Court's prior ruling and needs no repeating here (Dkt. #74 at pp. 1–3). Pertinent to the pending Motion is Plaintiff's retention of one Alan Someck ("Someck"), an individual with significant managerial experience in the restaurant industry, to opine on the amount and type of damages that Plaintiff incurred due to Defendant's failure to maintain the property it leased to Plaintiff (*See* Dkt. #38-5 at p. 6). In his expert report, Someck posits that the presence of bad odors in and around Defendant's leased property contributed significantly to Plaintiff's purported loss of profits and investment capital (Dkt. #38-5 at p. 6).

Defendant contends that Someck should not be permitted to offer testimony on either type of damage, as both are inadmissible under the facts of this case and have also been calculated incorrectly (Dkt. #38). Plaintiff responds that Someck is a qualified expert offering his opinion on two permissible types of damages and that he has not erred in his most recent damage calculations (Dkt. #43).

On May 28, 2025, Defendant moved to strike and exclude Someck's opinions as to Plaintiff's damages under Federal Rule of Evidence 702 (Dkt. #38 at p. 4). On June 11, 2025, Defendant filed its Response (Dkt. #43). On June 17, 2025, Defendant filed its Reply (Dkt. #44).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589.

"This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following non-exhaustive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

A traditional analysis regarding the admissibility of expert testimony involves a district court's consideration of the multiple nonexhaustive *Daubert* factors, which naturally precedes its ultimate declaration on the matter. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). But, as noted above, this is far from the exclusive means of addressing an expert witness

challenge. "[W]hether *Daubert's* suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (citing *Kuhmo*, 526 U.S. at 147–53). In this case, Defendant makes specific challenges to limited portions of Someck's opinion, rendering a full *Daubert* analysis unnecessary. *See, e.g.*, *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *4 (N.D. Tex. June 22, 2010) ("Because neither party has briefed the *Daubert* factors individually with respect to Callicoatt's opinions, the court evaluates Callicoatt's methodology based on Nunn's responses to State Farm's specific arguments and on his proof that the testimony complies with the general *Daubert* standards."). Thus, the Court will determine if Plaintiff's expert witness testimony is admissible in light of *Daubert* by addressing each argument sequentially. *See Perez Librado v. M.S. Carriers, Inc.*, No. CIV.A.3:02-CV-2095-D, 2004 WL 1490304, at *8 (N.D. Tex. June 30, 2004).

I.  **Lost Profits**

Defendant raises two arguments against Someck's interpretation of Plaintiff's proposed lost profits damages. First, Defendant avers that the leasing agreement between the parties (the "Contract") prohibits recovery of consequential lost profits, rendering Someck's opinion on the subject irrelevant (Dkt. #38 at p. 6). Second, Defendant claims that Someck fails to deduct actual profits from claimed lost profits, rendering his opinion unreliable (Dkt. #38 at p. 9).

Defendant's first argument is unpersuasive here for the same reason it was unpersuasive at the summary judgment stage. The Court previously held that Plaintiff may potentially recover its lost profits under the Contract if it proves those profits are a "direct," as opposed to a "consequential," result of Defendant's wrongful acts (Dkt. #74 at pp. 19–20). The Court also held that Plaintiff may potentially recover its lost profits under certain tort causes of action (Dkt. #74 at

4

p. 20). Thus, Someck's opinion is not irrelevant on these grounds. On the contrary, Someck's opinion will likely be crucial in helping Plaintiff carry its burden at trial. *See Harper v. Wellbeing Genomics Pty Ltd.*, No. 03-17-00035-CV, 2018 WL 6318876, at *10 (Tex. App.—Austin Dec. 4, 2018, pet. denied) (noting that whether lost profits are direct or consequential relates "to the nature of the breaches that were alleged and proved at trial—i.e., did the damages flow 'necessarily' from the breach, or only 'naturally'").

Defendant's second argument is unpersuasive, as its claim that "Someck fails to deduct actual profits from claimed lost profits" (Dkt. #38 at p. 9) is directly countered by the fact that Someck has since revised and reduced the applicable projected profits by $150,730.00 "based on the correct assumption . . . that actual profits needed to be subtracted from projected profits to get the corrected lost profits" (Dkt. #43-1 at p. 5). Because Someck has fixed the alleged "foundational flaw" in his methodology, the Court finds that Someck's testimony on Plaintiff's recovery for lost profits is not unreliable under FED. R. CIV. P. 702 (Dkt. #38 at p. 9).

## II.   Lost Investments

The matter of Plaintiff's "lost investments" has also been addressed by the Court's prior. There, the Court held that Plaintiff's pleadings allow it to seek recovery for tort damages under its "lost investments" theory (Dkt. #74 at p. 22). This decision was based in part upon the Texas Supreme Court's repeated recognition that obligations and duties separately imposed by contract and by tort may co-exist. *See Formosa Plastics Corp. USA v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 44 (Tex. 1998); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see, e.g.*, *MCN Energy Enters., Inc. v. Omagro de Colombia, L.D.C.*, 98 S.W.3d 766, 772 (Tex. App.—Fort Worth 2003, pet. denied) (holding that a plaintiff could recover under a negligent

misrepresentation theory separate and apart from a contract because a defendant "had a duty not to negligently misrepresent that it was committed to a business deal when it was not").

Defendant argues that Someck's proposed testimony on Plaintiff's "lost investments" should be excluded because of its irrelevance and unreliability (Dkt. #38 at p. 9). The Court agrees, and finds that the insufficiency of the proposed opinion warrants its exclusion from trial.

First, Someck's opinion is irrelevant. "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593). Defendant argues that Someck has failed to connect any damage amount to any act or omission taken by Defendant and has instead merely combined all of Plaintiff's business expenses over the years and offered it as proof of "lost investments." Defendant posits that "the Court does not need help to add up numbers on a page," and that the testimony is therefore irrelevant and cannot assist the trier of fact (Dkt. #24 at p. 10). The Court agrees, and finds that Someck's opinion on "lost investments" is impermissibly general under the facts of this case. In his expert report, Someck assumes "[t]hat it is reasonably probable that there would not have been a significant lost [sic] of investment capital if not for the conditions of the bad odor impacting sales and profit" (Dkt. #38-5). Even under this assumption, however, Someck does not offer any reasoning or methodology to explain how his definition of lost investments constitutes a compensable injury as opposed to an unrelated expense.

Nor does Someck offer insight as to the source of these expenses. For instance, he does not identify which portions of the "lost investments" arose as a pecuniary loss from Defendant's alleged negligent misrepresentation as opposed to Defendant's alleged fraudulent inducement. Someck does not identify which portions of "lost investments," if any, would have been spent

6

separate and apart from Defendant's actions or omissions. Someck's bare assumption, combined with a receipt of gross expenses, is not sufficiently relevant to render his opinion admissible at trial.

Second, Someck's opinion is unreliable. Defendant has argued and provided sufficient evidence that Plaintiff's "lost investment" damages constitute an impermissible attempt to recover for expenses borne by third parties. Plaintiff's expert report makes intentional and repeated reference to the "lost investment" damages borne by multiple illusory "plaintiffs" (Dkt. #38-5 at pp. 6, 18–19). In reality, only one Plaintiff—a business entity—is currently before the Court. These additional unnamed "plaintiffs" likely represent Plaintiff's owners, whose "lost investments" were marked in the report under a section entitled "Payments from Esmat Motlagh/Parviz & Paiam Mashayekhi" (Dkt. #38-6). Plaintiff's expert report ties "investment money lost over the period of operations" to the contributions made by illusory third-party "plaintiffs" near its conclusion, which describes its investment damages as "an influx of money from owners to manage financial challenges . . . . [t]hese payments are loans to the business that get paid back from a successful operation over time" (Dkt. #38-5 at p. 18). The expert report further references "Mr. Marsh and his wife" investing a total of "$983,224 back into the restaurant to keep it afloat" (Dkt. #38-5 at p. 9).

Someck's testimony begs the question: who has suffered under his interpretation of "lost investment" damages? Was it Plaintiff, or Plaintiff's owners and operators? The answer to this question is paramount, and controls whether Plaintiff has standing to seek what Someck defines as "loss of investment" at all. This is because Plaintiff, as a corporate entity separate and apart from its owners and operators, lacks standing to recover their damages for them. *See Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied) ("Even

assuming that sweat equity is a compensable damage, it would not be a damage that Ledeaux could be compensated for because it was Ledeaux's owners that made the time investment, not Ledeaux."). However, Plaintiff may recover for the lost investment of its own property, even when it is sourced from third parties. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders." (quoting *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (1942), *cert. denied*, 320 U.S. 210 (1943))); *see also Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir. 1984) ("It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that the title to corporate property is vested in the corporation and not in the owners of the corporate stock."). This legal reality is reinforced by the principle that "an individual shareholder, even a sole shareholder . . . has no standing to recover personally for damages incurred by the corporation." *Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 181 (Tex. App.—Houston 2011, pet. filed).

Someck's testimony simply does not permit the Court to accurately distinguish between injuries incurred by Plaintiff and the injuries incurred by illusory "plaintiffs." Neither Someck nor Plaintiff have clarified their interpretation of "lost investment" damages on this issue. As a result, the Court finds that Someck's opinion is unreliable under FED. R. EVID. 702.

Under the evidence presented, Someck cannot offer a relevant or reliable opinion on "lost investment" damages. As a result, Someck's expert opinion testimony as to Plaintiff's lost investments is rightfully excluded.

## CONCLUSION

It is therefore **ORDERED** that Defendant Gator Flower Mound, LLC's Motion to Exclude the Testimony of Alan Someck (Dkt. #38) is hereby **GRANTED in part** and **DENIED in part**.

Accordingly, Alan Someck will be permitted to provide an expert opinion on the matter of lost profits at trial, but will be prohibited from providing an expert opinion on the matter of lost investments at the same.

**IT IS SO ORDERED.**

SIGNED this 5th day of February, 2026.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE